# Allison *v.* E. M. Bigelow, State Highway Commissioner of Pennsylvania, Appellant.

*Road law—State roads—Damages—Consequential damages.*

Where a portion of an owner's land is taken under Section 16 of the Act of May 31, 1911, P. L. 468, establishing a State Highway Department and providing for a system of State roads, the owner may recover damages not only for the land actually taken, but also damages resulting from the fact that the construction of a State road cut off from the main portion of his farm and its buildings a considerable acreage of watered land to which he would have to drive his live stock across the State road.

There is nothing in the letter or spirit of the Constitution to prohibit a legislative enactment that the State itself in the construction of great public improvements for the benefit of the people at large should not respond to the same liability as is imposed upon the great municipalities of the Commonwealth through whose agency the government of the State is largely exercised.

Argued April 12, 1917. Appeal, No. 34, April T., 1917, by defendant, from judgment of C. P. Mercer Co., April T., 1915, No. 30, on verdict for plaintiff in case of H. W. Allison v. E. M. Bigelow, State Highway Commissioner of Pennsylvania. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Issue certified from the Court of Quarter Sessions of Mercer County to the Court of Common Pleas to determine the amount of damages sustained by the plaintiff by reason of a portion of his property being appropriated by the State highway commissioner, under Section 16 of the Act of May 31, 1911, P. L. 468. Before A. W. WILLIAMS, P. J.

At the trial it appeared that the Commonwealth took a portion of the land of the plaintiff in the location of a State road, and that in doing so it cut off from the main portion of his farm and its buildings a considerable

acreage of watered land through which he would have to drive his live stock across the State road.

The defendant presented, inter alia, the following point: "18. There can be no recovery in this case for the inconvenience to which plaintiff may be put in moving his cattle from one portion of his land to another, over this highway." Answer. Not affirmed. (22)

"20. No recovery for damages may be had against the Commonwealth of Pennsylvania, under Section 16 of the Act of May 31, 1911, except where land is taken.

Answer: Not affirmed.

Verdict and judgment for plaintiff for $1,000. Defendant appealed.

*Errors assigned* were various rulings on evidence and (22, 24) above instructions quoting them.

*Horace W. Davis,* Deputy Attorney General, with him *Francis Shunk Brown,* Attorney General, for appellant. —The measure of damages where a portion of an owner's land is taken under Section 16 of Act of 1911 is the value of the land actually taken: Com. v. Fisher, 1 Penrose & Watts 462; Newville Road Case, 8 Watts 172; Plank Road Co. v. Ramage, 20 Pa. 95; Fyfe v. Turtle Creek Borough, 22 Pa. Superior Ct. 292; Plan 166, 143 Pa. 422; Henry v. Pittsburgh and Allegheny Bridge Company, 8 W. & S. 85; O'Connor v. Pittsburgh, 18 Pa. 187; Lafean v. York County, 20 Pa. Superior Ct. 573; McKeen v. Del. Division Canal Co., 49 Pa. 424; Searle v. L. & B. R. R. Co., 33 Pa. 57; Jamison v. Cumberland County, 39 Pa. Superior Ct. 335; Jamison v. Cumberland County, 48 Pa. Superior Ct. 32; Jamison v. Cumberland County, 234 Pa. 621; Whitmire v. Muncy Creek Twp., 17 Pa. Superior Ct. 399.

Compensation from the State for land taken in the laying out of a public road is a matter of grace, and there can be no recovery for such injuries in the absence of legislation expressly providing for compensation: Acad-

emy of Fine Arts v. Philadelphia County, 22 Pa. 496;
Wagner v. Salsburg Twp., 132 Pa. 636; East Union
Township v. Comrey, 100 Pa. 362; Snively v. Washington Township, 218 Pa. 249.

*S. H. Miller,* of *Miller, Stranahan & Sampson,* for appellee.—The measure of damages where a portion of an owner's land is taken under the Act of May 31, 1911, is the difference in the market value before and after the taking as affected by the improvement.

OPINION BY HEAD, J., October 15, 1917:

The brief from the office of the attorney general is interesting, elaborate and instructive. But after the most mature reflection we are able to give to the questions involved we are impelled to the conclusion they lie within a narrow compass. Their solution, depending, as it does, on the construction of a statute, is not rendered any more difficult by the fact the State of Pennsylvania is a party litigant. In our conception of government there is no place for what we call the State if it is to be regarded as something different from or superior to the people who compose it. The entire civilized world is now observing the astonishing but tragic results of the evolution and development of the doctrine that the State is something other than the people who create it and give it all the power it has. What the legislative will has declared in a statute which contravenes no constitutional provision is the voice of the State and must be obeyed by all within its territorial limits.

By the Act of May 1, 1905, P. L. 318, it was declared in section 16: In case any person or persons shall sustain damage by any change in grade, or by the taking of land to alter the location of any highway, etc., and the county commissioners and the party so injured cannot agree on the amount of damages sustained, such person may present a petition to the Court of Quarter Sessions for the appointment of viewers to ascertain and assess

such damage; the proceedings upon which said petition and by the viewers shall be governed by the laws relating to the assessment of damages for opening public highways, etc.   There was in the language quoted clear evidence of an intention that the State should pay consequential damages resulting from injury to or the destruction of property even where no land had actually been taken.   The section of the statute quoted was amended by the Act of June 8, 1907, P. L. 505, by the elimination of the expression "by any change of grade." The injury for which suit was brought in Jamison v Cumberland County, 39 Pa. Superior Ct. 335, did not occur until after the passage of the Act of 1907.   The change in the law brought about by the enactment of the .amending act was the subject of inquiry in the case just cited as well as the one that followed it, reported in 48 Pa. Superior Ct. 32.   The judgment rendered in that case was affirmed by the Supreme Court, Jamison v. Cumberland County, 234 Pa. 621.   As the question before us involves the construction of the Act of May 31, 1911, P. L. 468, the cases just cited, and many earlier ones to which we have been referred, cannot be of much assistance.

In the case at bar the highway commissioner, in the exercise of the powers conferred on him by said statute, determined to change the location of one of the State highways which were the subject-matter of the act.   In so doing he actually took a portion of the land of the appellee, the value of which was separately found by the jury.   As to that portion of the verdict we have no contention.   But it appeared also that the construction of the highway, as relocated by the State's officer, cut off from the main portion of the farm and its buildings a considerable acreage of land.   This appears to have been the watered portion of the farm to which the livestock of the owner must have access in order to supply their natural wants.   Because their safety would require they be herded across the State highway, the jury found the

plaintiff would suffer inconvenience and damage which they fixed by their verdict. The attorney general urges upon us the idea the plaintiff was confined in his action to such damages as would represent the value of the land actually taken and the jury could go no further.

Our construction of the statute is different. The title of the Act of 1911, which was evidently carefully drawn, declares, among other things, the statute is to provide "for the payment of damages in taking of property or otherwise in the improvement thereof." Why the use of the words "or otherwise" in the title after it had specifically declared the act would provide for "damages in taking of property?" If damages for the value of the property taken, and no more, was the dominant thought of the legislature, why should not that intention have been fully expressed in the title without the use of the words "or otherwise"? Section 16, which gives rise to our contention, declares, "Before the Commissioner shall undertake the construction or improvement of any State highway, wherein a change of existing lines and location is necessary and damage is likely to result to abutting property, he shall, when possible, enter into an agreement with the owner as to the amount of damages to be paid to the said owner by the State." Or in case an agreement cannot be made, then the owners of the property damaged by the construction of the highway, "may present their petition to the Court of Quarter Sessions for the appointment of viewers to ascertain and assess such damage; the proceedings upon which said petition and by the viewers shall be governed by the laws relating to the ascertainment and assessment of damages for opening public highways." How much room is there for discussion as to the meaning of the language quoted? If a public road were to be opened in the usual and regular way, there could not be much doubt the paymaster must pay not only for the land actually taken in opening the new road but also for any injury to or destruction of the property of an abutting owner neces-

sarily brought about by the construction of the new road at the grade fixed.

Since the adoption by the people of our present Constitution, the exercise of the State's right of eminent domain vested by law in the great cities and other municipalities of the Commonwealth involves the same liability to compensate one whose property right has been injured or destroyed as it does where his land has been actually appropriated.   It therefore seems to us the legislature of 1911 but reassumed the position that had been taken in 1905 and was abandoned for a time by the passage of the Act of 1907.   There is certainly nothing in the letter or spirit of the Constitution to prohibit a legislative enactment that the State itself, in the construction of great public improvements for the benefit of the people at large, should not respond to the same liability as is imposed upon the great municipalities of the Commonwealth through whose agency the government of the State is largely exercised.   We cannot perceive any sound reason why the meaning of the language of the act is changed because the State itself, through one of its departments, is building the road.   That portion of the machinery of the government designated as the Highway Department is but one of the many servants the people of the State must employ in order that the work of government may be carried on as they desire to have it done.   The assignments of error are overruled and the judgment is affirmed.